E-FILED
Monday, 27 April, 2026 01:23:59 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

ADAM DELGADO,
Plaintiff,

v.

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,
Defendant.

Case No. 2:24-cv-02270-JEH-RLH

**Order**

Now before the Court are Plaintiff Adam Delgado's Motion for Summary Judgment (D. 48) and Defendant The Board of Trustees of the University of Illinois' Motion for Summary Judgment (D. 61).[1] The Motions are fully briefed, and for the reasons set forth *infra*, the Plaintiff's Motion is DENIED and the Defendant's Motion is GRANTED.

**I**

On November 25, 2024, *pro se* Plaintiff Adam Delgado filed his lawsuit against Defendant the Board of Trustees of the University of Illinois, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*., and the Illinois Civil Rights Act of 2003 (ICRA), 740 ILCS 23/5, for an alleged failure to hire him in early 2024 for the position of Executive Director for Public Safety and Chief of Police (EDPSCP) at the University of Illinois at Urbana-Champaign (UIUC). On December 12, 2024, the Plaintiff filed an Amended

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Complaint (D. 7) in which he stated, "This is an action brought by Adam Delgado, Pro Se, under Title VII . . . and 42 U.S.C. § 1981a [sic] for employment discrimination on the basis of race, National Origin (Hispanic) and color." Pl.'s Am. Compl. (D. 7 at ECF p. 1). He further stated that the ADEA "is applicable in this action as plaintiff was 57 years old at the time he applied for the position." *Id*. He stated he brought this action under Title VII and the ICRA. Def.'s Answer (D. 14 at ECF p. 2).[2] He sought declaratory relief, compensatory damages for lost wages and future earnings, fees, costs, "to eliminate UIUC's alleged tolerance for racial discrimination," and to make him whole. *Id*. at ECF p. 3.

**II**

The undisputed facts are as follows.[3] In August 2023, UIUC advertised the EDPSCP position. The posting outlined the following key requirements: bachelor's degree (master's preferred); ten years of relevant professional experience; community-based public safety experience; strong communication and management skills; a master's degree in public administration, criminal justice or a related field; and at least ten years of related professional experience in public or higher education is (preferred).[4] The key areas included: community-based public safety experience; university-specific leadership experience; and relevant management and administrative experience. As for the first area, the position required demonstrated experience in a community-based public safety

---

[2] The Court cites the Defendant's Answer (D. 14) for the entirety of the allegations contained within the Plaintiff's Amended Complaint. The Amended Complaint (D. 7) that appears on the docket consists of just two pages. It appears Plaintiff Delgado, who was granted e-filing privileges, failed to properly docket the entirety of his Amended Complaint on CM/ECF but nevertheless provided the Defendant with the entirety of that Amended Complaint in some other manner.

[3] Taken from both parties' briefs as to both Motions for Summary Judgment.

[4] To the extent the Plaintiff failed to respond to the Defendant's additional material facts in the latter's Response to his First Motion for Summary Judgment, the Court deems those additional facts admitted. *See* Civil LR 7.1(D)(3)(a)(5) ("A failure to respond to any numbered fact will be deemed an admission of the fact.").

environment, with a strong commitment to campus outreach and educational programs. As for the second area, the role required experience addressing the unique safety concerns of a large, diverse university environment. As for the third area, while Delgado held supervisory roles, the UIUC position indicated a preference for managing budgets, human resources, and strategic planning specific to a university police department. Matthew Joe Ballinger, a white male who was serving as Interim Chief of Police at the time, applied for the permanent position. His qualifications included: bachelor's degree; actively pursuing a master's degree in Public Safety Management[5]; 19 years of service with the University of Illinois Police Department (UIPD); leadership roles such as SWAT Commander, Street Crimes Supervisor and Deputy Chief of Police; and experience with community-based initiatives, such as the Community Outreach and Support Team. At the time of the hiring decision, Ballinger was 49 years old and had served with UIPD for 19 years, held various leadership roles, and was Interim Chief of Police.

Plaintiff Delgado submitted an application for the EDPSCP position, and at the time of his application, he was 57 years old. His resume reflected substantial investigative experience through federal and military service, including service with the Air Force Office of Special Investigations and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). His experience did not include significant community-based public safety leadership or campus-focused policing

[5] In his Response (D. 63 at ECF p. 8) to the Defendant's Motion for Summary Judgment, the Plaintiff "[partial[ly] dispute[s]" that Ballinger held a bachelor's degree and was actively pursuing a master's degree in Public Safety Administration. He says the Defendant has not included supporting documentation and any disposition if conferred. *Id*. He also says the high school diploma has not been provided. *Id*. However, Plaintiff Delgado *failed* to respond to those stated facts appearing in the Defendant's Response (D. 50 at ECF p. 8) to Delgado's own Motion for Summary Judgment – with the effect that they are now admitted. Also, the Defendant provided Ballinger's Declaration in support while Delgado did *not* provide citations to specific pages of evidentiary documentation as support for his claim that the fact is disputed. Def.'s Mot. Summ. J. Ex. 7 (D. 61-7 at ECF pp. 1-2); Civil LR 7.1(D)(2)(b)(2).

responsibilities. His resume did not reflect experience in university-specific public safety leadership, including oversight of a campus police department, campus-based community outreach programs, or responsibilities related to Jeanne Clery Act compliance. Although the Plaintiff's federal and military law enforcement experience was substantial, he was not even in the upper half of the applicant pool for the EDPSCP position as rated by the search/selection committee; his background lacked key elements required for the position, particularly community-based public safety experience.

Plaintiff Delgado's resume emphasized federal and military roles, focusing on high-level investigations, federal task forces, and international operations. There was minimal evidence of direct involvement in community policing initiatives, campus safety programs, or engagement with diverse university populations. Delgado's career does not reflect experience within higher education settings or familiarity with the specific challenges of campus policing. His background does not indicate experience in developing or managing policies related to university safety regulations, such as Clery Act compliance. There was no indication that he has experience overseeing a public safety department within a university, including responsibilities like community relations with students and faculty, and campus-specific security protocols. The Affirmative Action Analytics and Planning Division ensures equal opportunity throughout UIUC's hiring and promotion processes. As part of this process, UIUC has established Recruitment and Hiring Guidelines which guide all search and hiring processes.

The search/selection committee was chaired by Lowa Mwilambwe and consisted of 14 members drawn from the UIUC community. The selection committee chose Ballinger out of a diverse pool of over 30 applicants based on his qualifications and experience. The selection committee evaluated applicants based on the qualifications and preferences identified in the job posting, and the

materials provided to and reviewed by the committee did not include information regarding any applicant's race, color, or age. Applicants were evaluated using criteria derived from the job description, including education, professional experience, and qualifications relevant to leading a university police department. Committee members independently reviewed and scored applicants based on those criteria. The individual scores assigned by committee members were compiled and averaged to rank applicants relative to one another. Based on the compiled scores and rankings, only applicants who ranked at or near the top of the applicant pool were advanced through successive stages of the search process, including interviews. From that group, a smaller subset of applicants – three of them – were ultimately invited to campus for in-person interviews. The search committee was not responsible for conducting criminal background checks or verifying applicants' academic credentials. Criminal background checks were conducted by the University through an external service as part of the hiring process and were outside the scope of the search committee's responsibilities.

Recruitment and Hiring Guidelines issued by UIUC govern searches for academic-professional positions, including the EDPSCP. The search committee followed the University's Recruitment and Hiring Guidelines throughout the selection process. Throughout the search process, the search committee applied the same criteria and procedures uniformly to all applicants.[6] At no time did the search committee consider any applicant's race, national origin, color, or age in evaluating or ranking candidates. Based on the committee's scoring and review

[6] Again, as with several of the Defendant's other statements of material fact, Plaintiff Delgado did *not* provide citations to specific pages of evidentiary documentation as support for his claims that certain facts are disputed. Civil LR 7.1(D)(2)(b)(2). The practical effect of such a failure is that those facts are deemed admitted. *Id.*; *see also* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute . . . .").

of applicants' qualifications, experience, and interviews, and following a vote of the Board of Trustees of the University of Illinois, Ballinger was selected for the position. Nothing in the search committee's scoring, the job posting, or UIUC's hiring guidelines indicates that the Plaintiff's race, national origin, color, or age played any role in his non-selection. The record reflects that the University selected the candidate whose qualifications most closely aligned with the position's stated requirements, including university-specific leadership and community-based public safety experience.

After learning that he was not selected for the EDPSCP position, the Plaintiff did not apply for additional comparable public safety leadership positions beyond his initial round of applications. On or about August 12, 2024, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) arising out of his non-selection for the EDPSCP position. In his EEOC charge, Plaintiff Delgado alleged discrimination based on color and age.

**III**

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). However, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

Here, the Court simultaneously considers the parties' respective Motions for Summary Judgment. This is particularly appropriate given the Plaintiff's failure to closely comply with Civil Local Rule 7.1(D) which governs motions for summary judgment, and the fact that resolving one of the instant Motions would necessarily resolve the other and vice versa.[7] *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994) (stating, in the context of a local rule pertaining to summary judgment motions, that "[w]hether to apply such a rule strictly or to overlook any transgression is a matter we leave to the district court's discretion"); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (explaining that a movant still has to show that summary judgment was proper given the undisputed facts even where a nonmovant fails to respond to the motion for summary judgment, but

[7] In his Reply (entitled "Response to Defendant's Response to Plaintiff's First Motion for Summary Judgment") (D. 59) in support of his Motion for Summary Judgment, the Plaintiff explains that his Motion for Summary Judgment seeks resolution of his Title VII, ADEA, and ICRA claims. (D. 59 at ECF p. 11). In its Motion for Summary Judgment (D. 61), the Defendant seeks summary judgment in its favor as to the Plaintiff's Title VII, ADEA, and Section 1981 claims.

still, the district court permissibly applied a local rule to deem the defendants' facts unopposed).

With regard to the Defendant's argument that Plaintiff Delgado failed to exhaust administrative remedies as to any Title VII race or national origin claims and so the Plaintiff's Title VII claim is limited to color discrimination, the Court does not take as strict a view of the facts as Defendant does. On his EEOC Charge of Discrimination form, the Plaintiff checked "Age" and "Color" in response to the question why he believed he was discriminated against. Def.'s Mot. Summ. J. Ex. 8 (D. 61-8 at ECF p. 1). Further down on the form, following the prompt seeking the reason the Plaintiff believed he was discriminated against, the Plaintiff checked the box for "Color" and wrote "Brown Hispanic." *Id*. at ECF p. 2. Case law within the Seventh Circuit indicates that is enough for this Court to consider the Plaintiff's Title VII claim to encompass race and national origin. In *Pittner v. Advocate Lutheran General*, the U.S. District Court for the Northern District of Illinois explained:

> A claim for color discrimination will almost always implicate a person's race or ethnic origin. In this case, Pittner's EEOC charge made a general reference to discrimination based on color but did not make specific references to discrimination based on skin tone. Because the term "color" has long been used as a synonym for "race," and Pittner's charge does not refer to skin tone, an EEOC investigator reviewing would likely investigate race discrimination upon reviewing the charge. The Court thus finds that the race discrimination claim in the SAC would be expected to grow out of an investigation of the color discrimination claim included in the EEOC charge.

No. 18-cv-04370, 2021 WL 4459514, at *3 (N.D. Ill. Sep. 29, 2021); *see also Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, 175 F. Supp. 3d 1026, 1030 n.2 (N.D. Ill. 2016) ("The Seventh Circuit has identified 'Hispanic' as a race with respect to discrimination claims under Title VII and § 1981.") (citing *Yancick v. Hanna Steel*

*Corp.*, 653 F.3d 532, 545 (7th Cir. 2011) and *Nelson v. Realty Consulting Servs., Inc.*, 431 F. App'x 502, 506 (7th Cir. 2011) (unpublished opinion)); *Rivera v. Bd. of Educ. for Twp. High Sch. Dist. #214*, No. 23 CV 14977, 2024 WL 4534932, at *2 (N.D. Ill. Oct. 22, 2024) (noting that courts within the Northern District "have found that alleging discrimination based on being 'Hispanic' would reasonably cause the EEOC to investigate race and national origin discrimination[]"). Regardless, the Plaintiff does not challenge the Defendant's position in any meaningful way, and the reasons, *infra*, the Court finds in the Defendant's favor as to color discrimination apply equally as to race and/or national origin discrimination.

**A**

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The question to be asked in a discrimination case is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . Relevant evidence must be considered and irrelevant evidence disregarded." *Id*. To make a *prima facie* case for Title VII discrimination, a plaintiff must show that he: 1) belongs to a protected class; 2) applied for and was qualified for an open position; 3) despite his qualifications, he was rejected for the position; and 4) a similarly situated person outside of his protected class was hired for the position instead, or the position remained open. *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802-05 (1973)). If the plaintiff can establish the *prima facie* case, the defendant must then present evidence demonstrating a legitimate, nondiscriminatory reason for not hiring the plaintiff for the position. *Id*. Here, the Defendant's arguments and evidence as to the *prima facie* case and pretext dovetail such that the Court considers them together.

The Defendant does not dispute the Plaintiff is a member of a protected class but nevertheless argues the undisputed record establishes that Plaintiff Delgado has not shown he was qualified for the position under UIUC's stated, job-related criteria. The Defendant likewise argues that Ballinger's qualifications directly matched the position's stated emphasis on community-based public safety leadership and experience within a higher-education environment in contrast to the Plaintiff's primarily federal and military investigative background; thus, preferring a candidate whose experience more closely aligns with the employer's articulated job-related criteria constitutes a legitimate, nondiscriminatory reason for a hiring decision.

The Plaintiff counters that he has demonstrated that he was "well qualified" for the position under UIUC's stated, job-related criteria, and the selected applicant, Ballinger, had "serious derogatory information in his background." Pl.'s Resp. (D. 63 at ECF pp. 17-18); Pl.'s Mot. to Dismiss (D. 48 at ECF p. 3). Specifically, the Plaintiff contends he searched case records and found case numbers in Illinois state court – traffic offenses, civil suits by a health center, conviction for deceptive practices – pertaining to the name Matthew Ballinger with a birth date Delgado believes to be the Matthew Ballinger here. The Plaintiff also discusses alleged incidents involving UIPD officers and how such incidents show a "propensity of disparate treatment is prevalent in the UIPD." Pl.'s Resp. (D. 63 at ECF p. 18). He argues incidents pertaining to the UIPD should be considered when the Court evaluates his argument because "the defendant's [sic] have

claimed, tacitly by their approval of the selectee, that Chief Ballinger is the best qualified candidate and as such, his performance as the interim and permanent Chief are subject to scrutiny." Pl.'s Mot. Summ. J. (D. 48 at ECF pp. 11-12). He argues there are "way too many unanswered questions about the character of Ballinger." Pl.'s Resp. (D. 63 at ECF p. 20).

The summary judgment stage is the "put up or shut up" time in litigation. *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). Here, the Defendant has cited a plethora of record evidence which illustrates that Ballinger met the requirements of the job posting and that Plaintiff Delgado did not. For example, Ballinger had 19 years of experience with the UIPD, leadership roles including as Deputy Chief of Police, and experience with community-based initiatives, such as the Community Outreach and Support Team. Ballinger was actively serving in a campus-based executive leadership role when he applied for the EDPSCP position, and with that, he had direct responsibility for UIUC policing operations, administrative oversight, and coordination with students, faculty, and staff on matters specific to a large public university environment. His background included experience managing complex campus incidents, operational responsibility for addressing protests, mental-health responses, and other challenges unique to a university setting. Delgado's experience was limited to federal and military law enforcement, and he lacked the same level of community-based public safety experience that Ballinger had, particularly in the college campus setting. For example, in comparison, as a Chicago police officer, he was involved in crowd control for the Chicago Bulls championship celebrations, and as an ATF agent, Delgado responded to the George Floyd protests in Washington, D.C. In her Declaration, the search committee chair explained the committee evaluated the Plaintiff's application and ranked him twenty-second out of thirty-two applicants, and based on the rankings, the Plaintiff was not selected to

advance to the interview stage. Def.'s Mot. Summ. J. (D. 61 at ECF p. 4). The chair also explained that only applicants who ranked at or near the top of the applicant pool were advanced through successive stages of the search process, including interviews, and from that group, a smaller subset of three applicants were ultimately invited to campus for in-person interviews.

Meanwhile, Plaintiff Delgado mainly presents arguments, not evidence in support of his Motion for Summary Judgment and in his Response to the Defendant's Motion for Summary Judgment. Arguments, and particularly those that amount to mere speculation (as here), are not enough to create genuine issues of material fact. To the extent the Plaintiff disputes certain facts "because the selection process was most likely corrupted", that is not evidence. Pl.'s Resp. (D. 3 at ECF p. 5). To the extent the Plaintiff relies on the fact that Ballinger was "allowed" to apply for the EDPSCP position on January 2, 2024 though the job announcement closed on October 27, 2023, the record evidence clearly provides that "interested candidates are *encouraged* to submit materials prior to October 27, 2023", not that the application period definitively closed on October 27, 2023. Pl.'s Mot. Summ. J. (D. 48 at ECF p. 11); Pl.'s Compl. Ex. 13 (D. 1-2 at ECF p. 9) and Def.'s Mot. Summ. J. Ex. 1 (D. 61-1 at ECF p. 2) (emphasis added). While the Plaintiff makes much about the fact that Ballinger's photo was attached to his resume, the Plaintiff does not identify any evidence that committee members viewed the photograph, relied on it in scoring, or discussed the Plaintiff's race or color during deliberations. Likewise, the Plaintiff makes much about Ballinger's possible, previous guilty plea for "deceptive practices," but the Plaintiff does not cite evidence contradicting the fact that criminal background checks conducted by UIUC through an external service were outside the scope of the search committee's responsibilities. He cites no evidence that the search committee knew of, relied

on, or even considered any alleged criminal background information as to the various applicants.[8]

To the extent the Plaintiff argues he did not obtain certain discovery, that is not a matter for summary judgment nor sufficient to defeat a motion for summary judgment. It was the Plaintiff's choice to file his Motion for Summary Judgment before discovery even closed in this case. To the extent the Plaintiff harps on "serious derogatory information" in Ballinger's background and says Ballinger's Letter of Intent should be impeached because Ballinger mostly likely has "Giglio material" in his background, those arguments fail for at least two reasons. First, the former is unrelated to the question of whether the search committee used color or race in ranking and selecting the applicants, especially where the Plaintiff presents no evidence whatsoever that the search committee considered race or color. Not even a "conceivable" inference is necessarily reasonable at summary judgment. *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022). Simply put, the inference the Plaintiff suggests – that Ballinger was obviously chosen over Delgado simply because he is white while Delgado is brown given that Ballinger has a criminal history whereas Delgado does not – is not reasonable where it is directly contradicted by direct evidence the Defendant has provided of Ballinger's qualifications vis-à-vis the job requirements and which Delgado has not challenged with other record evidence. *See id.* ("An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a conceivable inference necessarily reasonable at summary

[8] The Plaintiff cites to and includes as Exhibits 19-20 in support of his Motion for Summary Judgment a Criminal History Data sheet for Cumberland County, Illinois and a Criminal History Data sheet for Coles County, Illinois pertaining to "Ballinger, Matthew J." together with a certified copy of a waiver of jury trial as to "Matt Ballinger," and a copy of summons directed to Matthew J. Ballinger. Pl.'s Mot. Summ. J. Exs. 19, 20 (D. 48-1 at ECF pp. 20-26 & D. 48-2 at ECF pp. 2-6). The years identified in those documents are span from 1996-2004. *Id*. The Defendant argues the Plaintiff has not offered any evidence that those documents concern the same Matthew Ballinger as here. Def.'s Resp. (D. 50 at ECF p. 8).

judgment.") (internal citations omitted). Second, the Plaintiff does nothing more than make conclusory statements as to "Giglio material," and the Court will not develop his arguments for him. *See Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 686 (7th Cir. 2024) ("[a]rguments that are underdeveloped, cursory, and lack supporting authority are waived[]") (quoting *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020)). The Plaintiff's reliance upon litigation he pursued years ago in federal district court in Washington, D.C. against the FBI and other cases involving the UIPD are immaterial to this Court's summary judgment analysis.

To the extent the Plaintiff argues alleged incidents involving the UIPD while Ballinger was "interim and permanent Chief" must be considered, the Plaintiff provides nothing to show that the search committee had that information, the Plaintiff fails to clearly provide dates for some of those alleged incidents, and the Plaintiff acknowledges Ballinger was not the Chief of Police at the time of at least one of the incidents. Additionally, Christopher Elston, former UIPD sergeant and whose deposition Delgado says reveals multiple cases of misconduct within the UIPD, stated in his deposition that he did not provide any input to UIUC or to the selection committee about the candidates for the chief position, and he did not communicate with UIUC at any point during the application and selection process or say anything to UIUC either in favor of or against Ballinger being selected as chief. Pl.'s Reply Ex. 31 Elston Dep. (D. 59-3 at ECF pp. 4, 7). What may or may not have happened when Ballinger was allegedly at the helm of UIPD does not create a triable issue as to how closely his qualifications aligned with the job posting which, in turn, the search committee used to evaluate applicants. As the Plaintiff himself puts it where he consistently repeats his credentials, his and Ballinger's were "apples and oranges" insofar as the EDPSCP position was concerned. *See, e.g.*, Pl.'s Resp. (D. 63 at ECF pp. 7, 8). The Plaintiff's argument in

this regard amounts to, at best, speculation, and, in the end, a court "need not accept as true a plaintiff's characterization of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (explaining that an employer would be entitled to judgment as a matter of law if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred).

The Court will delve no further into the Plaintiff's briefs; much of his arguments are just that, unsupported by citations to record evidence, the evidence he does cite does not raise material issues of fact, and his briefs also go far afield from what is relevant and material to the discrimination claims he brought in *this* case and therefore merit no discussion. *See Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022) (noting the fact-specific nature of the plaintiff's race discrimination claim). Ultimately, the undisputed evidence shows that Plaintiff Delgado's application did not demonstrate the credentials the EDPSCP position required such that he has failed to support the second element of the *prima facie* case for Title VII discrimination. In other words, the evidence the Plaintiff cites does not suggest his color drove the decision to choose Ballinger over him. Moreover, as the Defendant argues, this case is particularly ill-suited to a finding of pretext because the hiring decision resulted from a structured, committee-based process that relied on neutral, job-related criteria uniformly applied to all applicants. *See Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004) (defining pretext as meaning the proffered reasons are factually baseless, the proffered reasons were not the actual motivation for the decision, or the proffered reasons were insufficient to motivate the decision).

The Plaintiff has failed to offer evidence necessary to support his burden of persuasion. *See Reeves*, 530 U.S. at 143 ("Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times *with the plaintiff*.") (emphasis added) (internal citation omitted). Instead, as the Defendant maintains, Plaintiff Delgado relies on conjecture about how his resume should have been evaluated, speculation regarding the integrity of the hiring process, and allegations unrelated to the hiring record. His subjective belief that he was more qualified for a job than an applicant of a different color does not, without actual evidence or reasonable inferences arising from that evidence, present a question for a jury as to whether Delgado was discriminated against based on his color in violation of Title VII. *See Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 895 (7th Cir. 2016) ("A court is not a super personnel department that second-guesses employers' business judgments.") (quotation marks omitted); *see also Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ("a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions[]"). Notably, in *Millbrook*, the Seventh Circuit explained:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

280 F.3d at 1180. Here, the differences between Ballinger's and Plaintiff Delgado's competing qualifications are so favorable to *Ballinger* that there can be no dispute

among reasonable persons of impartial judgment that *Ballinger* was clearly better qualified for the position at issue.

The Defendant is entitled to summary judgment on the Plaintiff's Title VII color (and race) discrimination claim.

**B**

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). A failure-to-hire plaintiff must establish the following elements of the *prima facie* case: 1) he was a member of a protected class (forty or older); 2) he applied for and was qualified for the position; 3) the employer rejected him; and 4) the employer hired another similarly situated individual for the position who was substantially younger than he. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003). If the plaintiff establishes the *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision not to hire him. *Id*. If the employer asserts a legitimate, nondiscriminatory explanation, the burden returns to the plaintiff to show that the employer's proffered reason is merely pretext for age discrimination. *Id*.

As argued by the Defendant and as amply discussed above, the Plaintiff did not advance to the semifinalist round because he lacked the essential and preferred qualifications such that there is no genuine issue of material fact as to the second element of the *prima facie* case for age discrimination. The undisputed evidence is that the Plaintiff was 57 at the time he applied for the EDPSCP position whereas Ballinger was somewhat younger. The Plaintiff questions whether Ballinger was 48 or 49 years old at the time the latter applied for the EDPSCP position, but that does not create a triable issue. The Seventh Circuit considers "a ten-year difference

in ages . . . to be presumptively 'substantial' . . . In cases where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). Here, no presumption of a "substantial" age difference attaches, and Delgado presents no evidence that the search committee considered his age in any way. Rather, the Defendant has presented unrefuted evidence that the search committee evaluated candidates using neutral criteria and not based on any applicant's age.

Also as argued by the Defendant and as amply discussed above, the Defendant has articulated a legitimate, nondiscriminatory reason for its decision not to hire the Plaintiff – he did not possess the necessary qualifications. The Plaintiff provides no evidence to create a genuine question of whether that reason was merely pretext. As with his Title VII discrimination claim, the Plaintiff fails to cite record evidence showing his credentials "to be so superior to the credentials of [Ballinger] that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook*, 280 F.3d at 1180 (internal quotation marks omitted). The inference the Plaintiff suggests – that Ballinger was obviously chosen over Delgado simply because he is younger while Delgado is older given that Ballinger has a criminal history, etcetera whereas Delgado does not – is not reasonable.

The Defendant is entitled to summary judgment on the Plaintiff's ADEA claim.

**C**

42 U.S.C. § 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting Section 1981(a)). To establish a claim under Section 1981, a plaintiff must show that: 1) he

is a member of a racial minority; 2) the defendant had an intent to discriminate on the basis of race; and 3) the discrimination concerned the making and enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). A plaintiff must show that "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

The Defendant argues there is no evidence that the search committee members knew Delgado's race or considered race in evaluating candidates. The Plaintiff argues his "1981 claim is successful as a Matter [sic] of Law [sic]." Pl.'s Resp. (D. 63 at ECF p. 21). The Plaintiff is incorrect where, once again, he has presented no evidence to create a triable issue of whether but for race, he would not have suffered the loss of his legally protected right to contract. The insufficiently rebutted evidence of Ballinger's credentials as more closely fitting the EDPSCP than Delgado's and insufficiently rebutted evidence of the search committee's process in selecting the new EDPSCP in 2024 defeat the Plaintiff's Section 1981 claim. The Plaintiff's reliance upon prior litigation[9] against a different federal employer is entirely misplaced; as the Defendant puts it, a judgment involving unrelated actors and circumstances has no tendency to make it more or

---

[9] In *Delgado v. Ashcroft*, a D.C. district court found the suitability determination process and "Adjudicative Guidelines" used by the Federal Bureau of Investigation (FBI) to select Special Agents had a disparate impact on Hispanics and African-Americans. 368 F. Supp. 2d 3, 4 (D.D.C. 2004). There, the defendant's motion for summary judgment as to Delgado's disparate treatment claim was denied where Delgado's asserted "arrogance" was brought to the decisionmaker's attention in a "very irregular way," Delgado offered evidence that his supervisors in the Chicago Police Department and the military regarded him as having positive interpersonal skills, and he offered statistics concerning the FBI's employment practices to rebut explanatory defenses as pretextual. *Id*. at 7. Clearly, Plaintiff Delgado's earlier case against the FBI was entirely different from the instant case and thus does nothing to help the instant case get to a jury. There, he offered evidence. Here, he generally offers nothing more than rank speculation. *See Matthews v. Waukesha Cnty.*, 759 F.3d 821, 828 (7th Cir. 2014) (finding the plaintiff failed to raise a genuine issue of fact as to her claim of race discrimination where there was no evidence "other than rank speculation that [her potential supervisor] refused to consider [her] application or that [the supervisor's] examination of it was adversely impacted by the timing of its submission to [her]").

less likely that UIUC acted with racial animus in this case. The undisputed evidence shows the decisionmakers lacked knowledge of the Plaintiff's race, and therefore his claim instead *fails* as a matter of law.

The Defendant is entitled to summary judgment on the Plaintiff's Section 1981 claim.

**D**

As for the Plaintiff's ICRA claim, he has so strikingly failed to develop his summary judgment argument in that regard that the Court need not exhaustively separately analyze this claim. The result of the Plaintiff's failure is waiver. *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) (stating the plaintiff waived any counterarguments he may have had by not responding to the defendant's argument on the topic in his reply brief); *see also Buggs v. McNulty*, No. 2:23-cv-289, 2025 WL 2207297, at *3 (N.D. Ind. July 31, 2025) (noting a party waives an argument or abandons a claim when it fails to respond to an argument raised on summary judgment).

In any event, the Court treats the Plaintiff's ICRA claim as it has now treated his Title VII, ADEA, and Section 1981 claims, meaning, the Defendant is entitled to summary judgment on the ICRA claim too. *See Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 609 (7th Cir. 2021) (explaining it was "perfectly acceptable" for the district court to accept the plaintiffs' invitation to treat all three of the plaintiffs' claims as parallel by not separately analyzing the state and constitutional claims "given that Illinois courts 'look to cases concerning alleged violations of federal civil rights statutes' when interpreting the [ICRA]"). The result of summary judgment in the Defendant's favor on the Plaintiff's ICRA claim is the consequence of the Plaintiff failing to cite record evidence which creates genuine issues as to his versus Ballinger's qualifications vis-à-vis the EDPSCP position and the search committee's conduct. *See James v. Cook Cnty.*, No. 22 CV 03232, 2023 WL 7050019,

at *3 (N.D. Ill. Oct. 26, 2023) ("As a general matter, 'the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983.'").

**IV**

For the reasons set forth *supra*, Plaintiff Adam Delgado's Motion for Summary Judgment (D. 48) is DENIED, and Defendant The Board of Trustees of the University of Illinois' Motion for Summary Judgment (D. 61) is GRANTED. Summary judgment is entered in the Defendant's favor as to all of the Plaintiff's claims – his Title VII claim, his ADEA claim, his Section 1981 claim, and his ICRA claim.

Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

The Clerk is directed to enter judgment in favor of the Defendant on all of the Plaintiff's claims and close this case.

*It is so ordered.*

Entered on April 27, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE